Your Honor, I'm Larry Williams and I represent Mr. Littlesun. I'd like 10 minutes, please. It's 20 minutes for all of the defendants. Have you worked that out with everybody? Yes, Your Honor, and I can get done in about 8, I believe. Okay. Set the clock to 10, please. Counsel? Thank you. May it please the Court and Counsel, I'd first begin by answering the Court's order that we got on Friday about the applicability, if any, of Hall, Luciano, and Martinez to the issue of whether Crawford applies its sentencing. The answer is, in a word, those cases are not applicable, but they do add some guidance, although none are on point. Martinez does not address whether the testimony in that case, the hearsay testimony, was testimonial. It was used mainly to rebut Martinez's statements, and the Court brushed the issue by saying, because the right of confrontation does not bar the consideration of hearsay testimony at sentencing proceedings and so forth, but that begs the question, because the right of confrontation, even after Crawford, doesn't bar the consideration of hearsay at trial. It only bars the use of testimonial hearsay, because otherwise all hearsay would be barred. In United States v. Luciano, the Court reviewed that case on a plain error standard, analyzed the hearsay, which was essentially, they said, an excited utterance to the officer, and concluded it was not the type of testimonial hearsay addressed by the Court in Crawford. Finally, in United States v. Hall, that was an appeal of a revocation. This Court ruled that hearsay evidence was insignificant to the ultimate finding of the Court. In that case, it was a voicemail to a probation officer, followed up by a domestic assault, which was verified by some physician testimony and the defendant's own admissions. The Court in that case said revocation is not part of a, quote, criminal prosecution that the Sixth Amendment implicates. And that leads us to the ultimate question in this case. One of them, is a sentencing proceeding in the federal courts a criminal prosecution under the Sixth Amendment? And I believe the answer is that it is. But even if it isn't, in this case, the testimony of Jermaine Littleson fails either test, a bright-line test under Crawford or a balancing test under the Due Process Clause utilized by this circuit. Let me back up to the first part of your proposition for just a moment. I think you've said that these three cases we asked you about don't change anything. They do not, Your Honor. If they don't change anything, why isn't Williams v. New York the end of the constitutional argument? The answer is because the United States Supreme Court is no longer accepting, and this is the crux of my argument, balancing tests about whether hearsay is acceptable or not. I don't think that is balancing. I think Williams v. New York is not balancing. It's saying that the right of confrontation simply does not apply to sentencing, if I recall it right, which I may not. I'm not sure precisely, but still under Williams, there is a balancing test of due process in Morrissey and the other cases. And what Crawford is all about and what Justice Scalia is saying in Crawford is under the Confrontation Clause, the use of open-ended balancing tests results ultimately in a derogation of the right. And the Court says testimonial hearsay, which we define as grand jury testimony, preliminary hearing, and police interrogations. No doubt that this is a police interrogation of Mrs. Little's son here, that it's under that definition. The framers meant the Sixth Amendment to cover that. And there's no doubt then, if it is, if there is a bright-line test, that this testimony is excluded. And the answer to your question, Judge, is that Williams is no longer good law. Crawford is a sea change. Crawford is the imposition of a bright-line rule on certain testimony. Can we tell the Supreme Court that Williams is no longer good laws? No, you cannot, Judge. But what you can do is you can say that under Crawford, if you decide to go this tack, that a sentencing proceeding is part of the criminal prosecution. You can tell the Supreme Court that the statutory authority since Williams, the imposition of the sentencing guidelines scheme and a statutory scheme that ultimately makes sentencing and trial virtually indistinguishable, and in this case where the ultimate fact that was found by the judge, the quantity of drugs, is really what the criminal proceeding is all about, now brings Williams into question. And I believe that is doable by a circuit court. Certainly you can't tell them that Williams is no longer good law because of Crawford. I thought under Agostino we just had to follow Williams until they overruled it. And Crawford, if I recall correctly, correct me if I don't, didn't even cite Williams, never mentioned it. So as far as we're concerned, Williams is the law. Williams says the due process clause should not be treated as a device for freezing the evidential procedure of sentencing in the mold of the trial procedure, and that's that. That's under the due process clause. Williams was decided under the due process clause. Crawford was decided under the Sixth Amendment. Crawford dealt with evidence at a trial. Isn't that true? I'm sorry, Judge. Crawford dealt with evidence at a trial. That's right. Not at sentencing. Not at sentencing. That's absolutely correct. This issue is coming up in the sentencing procedure. It's coming up – it's coming totally out of the sentencing procedure. That's also right, Judge. And if – I just have – I reread the Booker case again a while ago. And in the Booker case, at least in Justice Breyer's discussion of the issues, he says that under the guidelines, if you look at them in a discretionary way, the district court judge can look at evidence that would not be admissible in a jury trial. That's the background of the individual, his prior conduct and so forth. But yet we know at sentencing, absolutely, that the defendant at sentencing has a due process right, and incorporated in that due process right is a right of confrontation on certain things. And in this circuit, for example, one is the fact that – Where does that come from? In this circuit, that comes from this circuit's law and the DeJesus and the Corral cases, which are in our brief, and where this circuit prohibits controverted accomplice testimony, hearsay testimony, about disputed facts. It's never said absolutely anything. We just have said that sometimes it's an abuse of discretion for the judge to base a sentence on hearsay where there aren't sufficient indicia of reliability and it's challenged. Judge, what this circuit has done is it's enacted a balancing test about disputed hearsay, accomplice hearsay at sentencing. It has enacted a balancing test about disputed hearsay at revocation proceedings and recognized that those balancing tests, that confrontation is part of the due process inquiry. But my rhetorical question is this. If one has a due process right to confront after the sentence has already been imposed in revocation, why don't we have a due process right to confront testimonial hearsay on a critical fact? Aren't you confusing the Fifth Amendment, the Sixth Amendment? The Sixth Amendment deals with confrontation. Yes, sir, it does. The Fifth Amendment deals with notice and hearing. But in this circuit, Judge, the circuit has already said that incorporated in that due process right, that right of notice and to be heard and to what processes do at a particular time, is the right to confront witnesses if certain things occur, and those certain things are included in this court's jurisprudence in that balancing test, just like they were in Ohio v. Roberts, the balancing approach. And what the Supreme Court did in Crawford said at least to the right of confrontation and at least on critical facts, that balancing test is no longer relevant. Watch the clock so you can save some rebuttal time for yourself. I'm sorry? Watch the clock so you can save some rebuttal time for yourself. And I would like to do so now, Your Honor. Thank you, counsel. Good afternoon, Your Honors. My name is Jim Obey, and I represent Mr. Jose Tenorio. I would like to rely on the arguments in my brief. I believe my co-counsel will certainly be addressing many of the same. Are you one of the Ice v. Mixture case? Yes, I am, Your Honor. I have a question about the Ice case. I know they pleaded to Mixture. And if I recall right, Ice is a different statute. Is that right? I'm not for certain, Your Honor, how that works, Your Honor. There is an enhancement there of over 88 percent I believe is considered Ice, 88, 85 percent. I'm trying to find what I'm thinking about here. What I'm interested in is it looks to me as though, if I understand this right, the defendants whose sentence was enhanced for Ice did not get the statutory mandatory minimum for Ice. They just got a sentencing enhancement within their statutory limit. Is that correct? That's correct. It went to the weight levels as far as how the enhancement was applied. I think it's important to note that when these people all pled to the indictment, they didn't know the math was Ice. Nobody knew the math was Ice. We had no information in any of the discovery that we were looking at an enhanced penalty for this. So when they went into court, they pled basically how much methamphetamine were you aware of, and the clients were saying around 50 grams, which is a far cry from 127, 128 grams of Ice that was attributed to each client, the case runner. I don't understand why you need more than an Amoline remand to deal with this problem. My thinking on it is they didn't get the statutory mandatory minimum for Ice. They just got a quantity enhancement. If the guidelines were mandatory, that would be unconstitutional. But since they're not, and they're going to get an Amoline remand where the judge knows they're not, it's not unconstitutional for the judge to consider the purity in his determination of quantity. And they're going to have plenty of notice of what's coming, assuming they get an Amoline remand. So I can't see the problem that it's not what they pleaded to. If they wanted to limit the quantity they could be sentenced for, they'd need, what is it, an 11E1C plea, and they didn't get that in their deal. Do you see my reasoning, and could you tell me what I'm missing? No, Your Honor. I think you are correct there. I think what we're addressing on the appeal is that these people did not know the quantities and or the purity of the meth that they were eventually found guilty of and what they were eventually sentenced to, Your Honor. And we feel that is basically, well, it's an error. As far as notice goes, they knew it once they read the pre-sentence report, didn't they? That's correct, Your Honor. It was addressed in an opportunity to be heard on. Yes, the objections were made to the district court, Your Honor, as far as the purity of methamphetamine. When they pleaded to the crime, the crime would be accomplished if they just had a detectable amount, wouldn't it? Yes, Your Honor. About 50 grams they admitted to. So what is it? I don't see why it would impeach the plea or bear on whether on an amyline remand the judge can consider that. Your Honor, I guess we go back to the right of confrontation. They're also involved in this argument is that they didn't have a chance to actually challenge that. The court found that, yes, I am the finder of fact in this. The enhancement will stand in this case. You have admitted to drugs. I am determining the quantity and purity of those drugs. If it was remanded, Your Honor, I believe that the court would then find the correct purity or quantity through a due process argument with witnesses as necessary. So you're relying on the Crawford argument. Yes, Your Honor. My client can only be found guilty for what he admitted to or what is found to be unreasonable. Under Booker, and as we've interpreted it, the judge has the right to make those findings. Yes, Your Honor, he does. The second issue we addressed in our argument is that at the time of the sentencing there was hearsay testimony through the testifying FBI agent concerning statements made by a co-defendant in this case. Although we certainly agree that the sentencing does not require that it not be hearsay information, there is an indicia of reliability which we feel is lacking in this case. The co-defendant hearsay information was not we asked the officer, have you used this gentleman before? What's the reliability? He said he didn't know what the reliability is. He was relying on the different reports. Basically, the information was presented in the sentencing, and it was not reliable. There's no information that the informant, co-defendant hearsay information was reliable, Your Honor. And for that reason, we would also ask that it be suppressed. And I would reserve any argument time I have. Thank you, counsel. Thank you. Good afternoon, Your Honors. My name is Michael Donahoe. I'm from the Federal Defender's Office. I'm a pinch hitter here. The lady that wrote the papers for the Court is no longer in our employ. But I have canvassed this record carefully, and I am here to press this double jeopardy claim. I like the claim. Your Honors may think that I'm totally out of the lunch here, but I've given it some serious consideration, and I think I have an argument to make. When this defendant, Juan Moreno, pled guilty before Judge Siebel, he did so under the terms of a plea agreement. And in the context of that plea agreement, there were amounts expressly cited that exactly tracked the indictment. There were 210 grams involved in the conspiracy, 180 grams of a mixture or substance, not pure meth, as distinguished from pure meth, a mixture or substance, for a total of approximately 390 grams of methamphetamine. Why does it matter if all it affected was the judge's, as we know now, discretionary determination of quantity, as opposed to imposition of the statutory mandatory minimum? Because the statutory mandatory minimum, which was determined at the time of the guilty plea, was 50 grams of mixture or substance. And that put the man in a range, this defendant, of 5 to 40 years. Now, his floor was 60 months. He got 100 months as a matter of sentence. Hold on. I need to follow you here. This is really the crux of it. Okay. Under 841, what he pleaded to was, let's see, which section was the indictment that he pleaded to? Actually, I think it's B, Your Honor. It's the floor of 5 years and the maximum of up to and including 40. I thought he just pleaded to subsection little roman numeral 8, 5 grams or more of methamphetamine or 50 grams or more of a mixture. 50 grams or more of mixture or substance. That gave him a 5-year mandatory minimum term. He admitted that to Judge Siegel. Okay. So there he gets mandatory minimum of not less than 5 years. But he had 50 grams or more of a mixture. Right. Right? Right. But the plea agreement. And he did not get. See, what I'm looking at is he did not get. Oh, I'm sorry. I lost track. He did not get. Now, I know exactly what Your Honor is talking about. You are exactly right, Your Honor. Judge Siegel even says that at the top of the sentencing. He indicates that he makes that argument to defense counsel. He says, now, hold on here. If this pure stuff had been known at the time, this guy would be getting a 10-year mandatory minimum, not a 5-year mandatory minimum. And counsel concedes the point. But my point is, is that we couldn't get to the 10-year mandatory minimum because that wasn't clarified at the time of change of plea. They were not dealing with a pure substance. After Booker and where we are today, the purity of this substance is a material sense, in fact. It doesn't necessarily, under this Court's law, have to be an element. If it's a material sentencing fact that advances the ball in terms of penalty, it has to be proved beyond a reasonable doubt. That was not done at the change of plea hearing. He pled to the 5-40 offense. He had a floor of 60 months. If you did the calculations as outlined by the weights in the plea agreement, you would come up with somewhere between 750 and 780 grams or, I'm sorry, kilograms of marijuana after you did the conversions. That would put him at an offense level of 30, even conceding the point, and I will openly here, I don't want to talk about the public housing point. I'll waive the argument on that. He's at level 31 with his three-point adjustment down. He's in a range where he can get a sentence of about 20 months less. So the critical point for this defendant here, Mr. Marino is, is does the double jeopardy issue, is it a viable claim? And if the case goes back, is Judge Siebel bound to sentence under a mixture of substance and not a pure substance? What I was thinking was that what the double jeopardy claim was good for, from the defense point of view, oh, incidentally, all the arguments raised in the briefs are there before us. You don't need to restate them in oral argument in order to avoid waiver. What I was thinking the double jeopardy argument was good for would be if you went back on an amyline remand and the government said, wait a minute, we're going to reindict him. And even though he pleaded, we're going to indict him for the greater offense that would give him the 10-year mandatory minimum. And there, I think under our Ellis en banc, you could tell him to get lost. And I agree with that wholeheartedly. I think that's the only double jeopardy argument I understand. I don't understand how it applies to the sentencing. I'm saying, Your Honor, that in the context of even if we broaden the proceeding to include the sentencing, before Judge Siebel finally makes the purity finding once and for all, it's discussed on the front end of the sentencing. But before he actually makes that finding that he's going to sentence using the pure substance, he accepts the plea agreement. If Judge Siebel accepted the plea agreement, he was bound by the weights in the plea agreement. Why? If it wasn't 11A1C? They were mixture or substance. It was what the man admitted, essentially, at the change of plea hearing. And what I'm saying is, is that the ---- But mixture or substance isn't an element of the crime that excludes pure meth. But it's a material sentencing fact after Booker. It's got to be. We're breaking down here in terms of how we look at this. For those of us that have been around for a long time, and I know Your Honors have been around for a considerable time, it's changed now. It's not is it an element and is it the same, is it a lesser included, is it the same. It's not that anymore. If the matter was admitted and it was a mixture or substance at the time of the plea, that can't be reconfigured in the context of the sentencing. That's a done deal. You can't change the style or quality of the substance to advance the penalty. That's a clear Booker violation. Now, one would say probably, well, the guidelines are advisory now. But that doesn't alter the fact that the double jeopardy is freestanding. It stands on its own. And a person shouldn't have to go through the vagaries of a second determination. There shouldn't be reconsideration of that which was determined either in the context of the plea or in the case. You say it's a Booker violation. What is the remedy for a Booker violation? In this particular instance, it's not to reconfigure the quality of the substance or its purity and not to reconfigure the amounts. And the authority for that is? Well, I think some of the... I just read Booker again today. The remedy there doesn't include that. Well, I think that Justice Stevens in Booker talks about taking another look at wit. He references that and drops a footnote on... I'm talking about the remedy, and that was not written by Justice Stevens. Well, and I understand that. But I don't think that necessarily, respectfully, Your Honor, that the language that you're alluding to in Justice Breyer's opinion, one could consider all kinds of factors, hearsay and otherwise maybe, because the guidelines are advisory. But because the guidelines are advisory is not a panacea. It's a brilliant remedy, but it's not going to cover everything. No, it is kind of a panacea. Justice Stevens wrote, if the guidelines are mandatory, they're unconstitutional. And he had a majority of the court for that proposition. That's a conditional proposition. And then Justice Breyer dropped the other shoe, and he said, but fortunately, they're not mandatory. But I guess I'm saying here, if you look at the sentence, when it's finished and completed and entered and imposed, the man gets 100 months. If Judge Siebel had no inclination to depart upward, and there was no suggestion that he had such an inclination, I'm saying that at the end of the day, if the mixture of substance had been the way the sentence was configured under the methamphetamine aspect of this case, the guideline advisory sentence would have been much less. And those determinations were essentially made in the context of the guilty plea proceeding and the sentencing itself. And then at the very end, they were reconfigured, and the pure substance was used to impose the sentence. Thank you, counsel. Thank you. I know we went way over your time with you. It's not your fault. We just got interested. We have used up the 20 minutes allowed to all of the defendants. You're representing another defendant? Yes, sir, Judge. My name is Sandy Selby, and I represent Mr. Paredes. I hope you all understood that that 20 minutes was for all defendants. I think we rejected a motion, if I'm remembering the right case, to make it more. Why don't you take two or three minutes anyway? I don't want to belabor the point, Judge. I want to adopt the other counsel's arguments as applied to my client also. And my main thrust of argument on behalf of Mr. Paredes is simply that Judge Siebel determined to sentence him to 97 months based on 180 grams of a mixture of methamphetamine that was found in the automobile. That's what he decided to sentence my client on. However, what happens is that the government then presented evidence in Mr. Moreno's case through the FBI agent Wolfgang, who claimed that, well, this 180 grams of a mixture meth that was found in the automobile turned out to be 127.7 grams of pure. My client never admitted to anything of pureness or otherwise, just simply to the 180 grams of meth that was found in the automobile. And I think what the government did when it presented a crime lab report, which we say is hearsay and that has already been argued, however, but the government did not produce any evidence to convince Judge Siebel or if there was anything on the record for Judge Siebel to look upon where he could find beyond a reasonable doubt that Mr. Paredes, my client, had knowledge of the purity of the drug. A crime lab report simply tells you the mixture and then the purity of it. And, of course, the first we heard about that is when we got to PSR about the purity of it. But never mind that. The government never introduced a single shred of evidence that Mr. Paredes knowingly possessed with the intent to distribute 127.7 grams of pure methamphetamine. It's just a myth. It's just something that was made up by the government by using a mathematical equation. Thank you very much. Thank you. I have a question. Judge Kleinfeld has asked the other attorneys, isn't this something that can be remedied at an amyline hearing? It seems to me that you're arguing that it would be unreasonable for the judge, and this goes back, let's say he comes up with exactly the same sentence. Isn't that an argument that's off in the future? If this case would be amended for purposes of resentencing, then, of course, at that point in time, I would ask the judge to compel the government to produce evidence that would convince him beyond a reasonable doubt that, in fact, my client knowingly possessed 127.7 grams of pure methamphetamine. Why does he have to? I thought all you had to do was knowingly possess any measurable amount or any detectable amount, and then you're guilty of the crime that your client was convicted of. He was indicted for a mixture. He pled to a mixture. Wait a minute. Which subsection was he convicted of, any detectable amount or the 10-year mandatory minimum amount? He was under the in excess of 50 grams or more of a mixture, which calls for a mandatory minimum of 5 to 40. Okay, so I don't see where what he knew mattered, since it doesn't get him convicted of anything different from what he pleaded to. But if the indictment says that he knowingly possessed, then knowingly is an element of proof. The indictment doesn't make something an element of the crime. Only the statute makes something an element of the crime. Yes, Judge, and I understand that. But when the government laid out in the plea agreement as to what the elements were, they have to prove that he knowingly possessed with the intent to distribute this methamphetamine. What he was pleading to and admitted his guilt to was that he possessed with the intent to distribute the mixture. The government comes back in at time of sentencing and says, oh, no, now we're going to enhance the penalty, because we would have been at a level 25, is what we argued. But instead, they put him at a level 32 and then back it down to a level 30, because now we're talking about the pureness of the drug that's derived through a mathematical equation at the time lab. I don't get that. I'm remembering something that used to come up all the time when I was writing jury instructions, that the government can indict. I can't remember the verbal formula. But basically, they can indict in the alternative. They can say the defendant did this or this or this. And if they prove any one of them and that's enough for the crime, they win. What's happened in our district, to some degree, after this case, in fact, and a couple of cases I've handled since that time, now the government is going to the grand jury and then alleging that they possess X number, X quantity of drugs being a mixture, and then they'll put in parentheses within the indictment the purity of it. I remember you can indict in the conjunctive and prove in the disjunctive, I think is the way it's put in Wright and Miller. And I'm thinking here, that's applicable. You can indict for a mixture. A person can plead to a mixture. And then if the pre-sentence report says it was pure, the person cannot be sentenced to the higher mandatory minimum on account of the purity. But the judge can make a finding on quantity within the limits of the subsection that he was indicted for, the mixture subsection. Why isn't that right? Judge, I think it's a due process thing. I think it's been reading the cases out of the Ninth Circuit, and we're talking about beyond a reasonable doubt. I think we're talking Sixth Amendment, Fifth Amendment. It certainly is beyond a reasonable doubt. And I think expectations and notice of the defendant. And this one case that I did not cite in my brief but, however, has come out in 2005 is United States v. Macedo, M-A-C-E-D-O. It's a Seventh Circuit case. But in it, it says the defendant had been found guilty after a jury trial possessing 600 grams of methamphetamine. Based upon the purity level of the drug, the district court sentenced Macedo to the involvement with 799.7 actual grams of methamphetamine, not the 600 grams as found by the jury. The court held such sensing in reliance on supplemental facts not admitted by Macedo, which I think is important in this case, or proven by the jury beyond a reasonable doubt, namely involvement with 799.7 grams of methamphetamine, actual as opposed to involvement with merely 600 grams of methamphetamine. It squarely offends our new understanding of the Sixth Amendment as defined by Booker. Thank you, counsel. Thank you. We'll make this one three minutes as well. You're the last of the five, right? You're the last of the five defendants? I'm the last one, June Lord, on behalf of Sergio Moreno. And my issue isn't a sentencing issue. My issue is a violation of the Fourth Amendment. When they stopped the car, Mr. Sergio Moreno owned the car. He's a Mexican person. He'd been in this country about two years, unfortunately, illegally. Why doesn't it kill your argument that the judge said, on the record, I watched the transcript and I find, as a matter of fact, that he understood just what he was hearing and just what he was saying when he consented to the search? I don't think the evidence supported that. Well. I think the policeman was the one who did. You've got to break it under the clearly erroneous standard because it's a finding of fact. I know that. So why is it clearly erroneous? I think it's clearly erroneous because he didn't understand what was going on. What evidence in the record shows that he didn't to an extent that the judge's finding is clearly erroneous? Well, what happened is that the policeman had a co-defendant translate, he said, and the policeman didn't speak Spanish, and the policeman just gave a conclusory opinion that he understood. That isn't sufficient evidence under the law to support the fact that he gave a consent to search. And I put all of this in the brief. The government has said that he wasn't under arrest. Well, arrest isn't necessarily formal arrest. He was not free to leave at that time. If he'd have gotten in that car and left, he would promptly have been stopped again. So that's a higher standard. And that's all in my brief. And I won't repeat that. But as far as the sentencing issue goes in this case, Sergio Moreno was the least involved. And he got 135 months just because he chose to go to trial. And I don't believe that's reasonable. Is there any difference in his sentence that goes beyond the discount for acceptance of responsibility? He had – it's not reasonable because if the guidelines are advisory, then a part of the guidelines sentencing are these perks for not going to trial. But he had pled, and that plea was rejected, and he chose to go to trial because he didn't have any faith in the government at that point. But a reasonable sentence would not cause him to have substantially more time than his co-defendants just because he did choose to go to trial. And I see I have a stop sign. Thank you, Counsel. We went way over time, so you can't really count on being allowed time for rebuttal, but prepare for it anyway just in case we allow a minute or two for rebuttal. I don't want government counsel to think that there's no risk of rebuttal. We'll hear from the government now. Thank you. May it please the Court, my name is Marsha Hurd, and I'm an assistant U.S. attorney for the District of Montana. I appreciate your willingness to allow me to appear by video here today. In answer to the question that the Court asked on Friday, the Martinez, Luciano, and Hall cases are applicable to the Crawford question that has been raised only by one defendant in this case. Horace Wilson is actually the only defendant who raised at his sentencing proceeding any kind of a Crawford argument. The other defendants did not make such a confrontation clause argument. And I think that the cases of Martinez and Luciano are directly on point to the situation that we find ourselves in here today. I do not agree with Mr. Little's son that those cases are different in any fashion than the case that we have. Basically, Crawford is simply not applicable to the sentencing proceeding. In order to find that it does, there would have to be an overruling of a number of United States Supreme Court cases. And Crawford would have addressed some of those, but said they chose to leave for another day, in which proceedings this would apply and what exactly would be testimonial. And I think the Court was correct on the first question. In order to follow the argument made by Mr. Little's son, this Court would have to overrule Williams v. New York and find that it was no longer good law. I don't agree that what Crawford does is basically discounts in its entirety balancing tests. Williams basically said that right of confrontation doesn't apply to sentencing. That's been reiterated, and it's been adopted by every circuit court, including this Court. And so at this point, there's nothing in Booker, nothing in Crawford, and nothing in Ameline that makes any difference to that analysis. And it does not make sense. If you look at hearsay being admissible in a mandatory guideline setting, as it was before, why would hearsay not be admissible in a discretionary guideline sentencing? That argument simply just doesn't make any sense. With regard to the other arguments that have been made about the ice versus mixture situation that was pled, I think the Court has basically hit the nail swirly on the head here. None of these defendants received a mandatory minimum under the 10-year or more sentencing statutory scheme for a higher purity of methamphetamine, and an Ameline remand could fix any concerns that would be had in this case. I missed some of your words there. Could you say that again? I couldn't understand some of your words. I'm sorry. An Ameline remand is obviously going to be required. And I think that under- Counsel, I don't think you heard me. Counsel, I did not understand some of the words that you said when you were explaining why the plea of guilty to the indictment does not bar the government from sentencing or the court from sentencing on the basis of ice. I'm sorry, Your Honor. The situation is this. A defendant pleads guilty to possessing with intent to distribute a certain narcotic, but there was no agreement in this case as to quantity or as to quality. Well, he pleads to more than that. A detectable amount that was less than 50 or 500, I think it was, would not get him the mandatory five-year minimum. And he pleaded to a mixture that would get him the mandatory five-year minimum. And he's saying, well, yeah, that's what I pleaded to, that's all I pleaded to. I didn't plead to ice that would get me a mandatory five-year minimum or a mandatory ten-year minimum. And I think that's factually correct. None of these defendants pled to a specific quantity. All of them were very careful to say about 50 grams. I thought they did plead to a specific quantity that would get them the mandatory five-year minimum. They did plead to around 50 grams. None of them would admit to the entire amount that was in the car. Did they plead to at least 50 grams of a mixture? That's correct. And we all agreed to reserve for sentencing for the court under Thomas a decision of the quantity and quality of the narcotics involved, all of us knowing that that was going to be determinative of what the sentencing was. Wait a minute. Did they plead to around 50 grams, reserving the question of the quantity, or did they plead to at least 50 grams? All of them were very careful to plead to 50 grams or more. But none of them pled to a specific amount more. So every one of them, of the people that we're hearing today, except for Horace Littleson, of course, this case is different. But Mr. Moreno, Mr. Paredes, and Mr. Tenorio all pled to 50 grams or more. Mr. Sergio Moreno is the only defendant who ended up going to trial in this case. And he makes two arguments, the first being that his consent to the search of his vehicle was not voluntary. That argument is a tough one to make in this case because this stop, this search, and this consent was all on videotape that was played for the court. And the court listened and watched and made a factual determination that as a matter of fact, the consent was valid. And there is nothing in this case to indicate that that is a clearly erroneous finding. There is no evidence the defendant can point to. The other issue that he has raised is claiming that his sentence was unreasonable, that he claims he was lesser involved than other people in this group of four, and he ended up with the most time in terms of months. That was unreasonable. But as he even pointed out, he's the only one who went to trial. He claimed that he did not know the amount that was in there and did not know that there was methamphetamine in the car. And so his sentence is a reflection of the fact that he went to trial. It's also a reflection of the jury's specific finding of quantity. If the court has no other specific questions that you'd like me to answer? I guess we don't. Okay. Thank you very much. Thank you, counsel. Why don't you confer for a moment and see who has to speak, if anyone, and take one or two minutes for rebuttal. Your Honor, if the court would please. On behalf of Mr. Juan Marino, I do want to make clear that in pages 45 to 46 of the excerpts of record, Mr. Marino admits expressly to 180 grams of methamphetamine, which is of a mixture of substance, which is exactly the amount and style of methamphetamine alleged in the indictment. And it also tracks with the plea agreement as to the nature of the agreement that Mr. Marino makes in page 46. Stick around for just a sec while I look at it. Did you raise the double jeopardy argument before the district court? We did, Your Honor. Let's see. The judge says I'm looking at 45, 46 of Juan Marino's excerpts. Correct. And that's where the judge says, why do you believe you're guilty of the crime charged in count eight where you and three other people are charged with knowingly and unlawfully possessing approximately 180 grams of meth with intent to distribute it? And then the defendant says it was because I had those drugs in the car. Is that what you're referring to? Yes, Your Honor. And then it goes on, and I think the weight is clarified again on the next page. Around line seven to 12. Was there approximately 180 grams of methamphetamine in the car? Yes, approximately 180. Yes. Okay, so that's what I need to look at. Thank you. Thank you, counsel. Very briefly. Counsel? In the plea colloquy, what we agreed to allow Judge Siebel to determine was simply drug quantity. There was never any discussion whatsoever about drug purity. And, again, the judge determined that he was going to sentence us to the 180 grams found in the automobile, again, a mixture. And then it turned into the argument about purity. And specifically on page 10 of the sentencing transcript, I argued that my client had no knowledge about any purity of the drug. And no evidence was put on during my client's sentencing by the government about his knowledge about the purity of the drug. Thank you. Thank you, counsel. United States v. Littleson et al. is submitted.
judges: Browning, Alarcon, Kleinfeld